Robert T. EWING, an
individual, Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

No. 1051, Docket 83–4183.

United States Court of Appeals,
Second Circuit.

Argued May 16, 1985.

Decided July 19, 1985.

Michael H. Ranzenhofer, Buffalo, N.Y. (Mattar, D'Agostino, Kogler & Runfola, Buffalo, N.Y., of counsel), for petitioner.

Ellen O. Boardman, Washington, D.C. (Howard E. Perlstein, Rosemary M. Collyer, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., of counsel), for respondent.

Before KAUFMAN, OAKES and CARDAMONE, Circuit Judges.

CARDAMONE, Circuit Judge:

This case is before us for the second time. Robert Ewing was not recalled from a lay off because his employer mistakenly

believed that he had filed a safety complaint with the Occupational Safety & Health Administration (OSHA). On the first appeal, we concluded that the determination that the employer had not unlawfully discriminated against Ewing made by the National Labor Relations Board (Board) was not supported by substantial evidence. We remanded the case for the Board to determine whether to apply retroactively its recent decision in *Meyers Industries,* 268 N.L.R.B. 493 (1984) (*Meyers*), in which it adopted a literal definition of "concerted activities" under § 7 of the National Labor Relations Act (Act), 29 U.S.C. § 157 (1982). *Ewing v. NLRB,* 732 F.2d 1117, 1122 (2d Cir.1984). On the instant appeal the Board and the employer urge that we apply the *Meyers* rule. But recently the District of Columbia Circuit reversed *Meyers* on the grounds that it rested on an erroneous view of the law and was unsupported by any policy of the Act. *Prill v. NLRB,* 755 F.2d 941 (D.C.Cir.1985). More importantly, the Supreme Court in *NLRB v. City Disposal Systems,* 465 U.S. 822, 104 S.Ct. 1505, 79 L.Ed.2d 839 (1984), recently stated that the Board is not required to read the phrase "concerted activities" according to its dictionary definition. As a result of that holding, and guided by Justice Frankfurter's observation that statutes "are not abstract propositions [but] are expressions of policy arising out of specific situations and addressed to the attainment of particular ends," Frankfurter, *Some Reflections on the Reading of Statutes,* 47 Colum.L. Rev. 527, 533 (1947), we decline the invitation to apply *Meyers.*

## I  BACKGROUND

### A.  *The Procedural History*

As the facts of this case are fully discussed in our previous decision, they will be summarized only briefly. In October 1980 Ewing was employed as a piledriver operator by Herbert F. Darling, Inc. (Darling) on a rapid transit construction project near Buffalo, New York. During the fall of 1980 OSHA conducted a routine inspection at the jobsite. The inspection was not prompted by a complaint. A month later Ewing was laid off. An Administrative Law Judge (ALJ) found that except for brief periods the employer later refused to recall Ewing because company officials mistakenly believed that it was Ewing who had filed an OSHA complaint. The ALJ found that Darling's vice-president had told Ewing "that [the Company] had narrowed it down to three men who they believed reported the Company to OSHA, one of them was Ewing, and it did not want Ewing working for them." *Herbert F. Darling, Inc.,* 267 N.L.R.B. 476, 480 (1982). The ALJ concluded that the employer had violated section 8(a)(1) of the Act, 29 U.S.C. § 158(a)(1), by failing to recall an employee for filing a complaint with OSHA.

On appeal, the Board rejected by a two-to-one vote the ALJ's credibility resolutions and held that the employer had not violated section 8(a)(1) of the Act. *Herbert F. Darling, Inc.,* 267 N.L.R.B. 476, 478 (1983). Ewing appealed the Board's decision. A panel of this court reversed because it concluded that the Board's decision was not supported by substantial evidence. *Ewing,* 732 F.2d at 1122. Nonetheless, we remanded because while *Ewing* was on appeal, the Board in *Meyers* rejected the legal theory relied upon by the ALJ. *Meyers,* 268 N.L. R.B. at 496–97. The *Meyers* Board held that an individual's invocation of an employment-related statutory right would no longer be deemed to be concerted activity within the meaning of § 7 of the Act and concluded that an employer therefore did not violate the Act when it discharged an employee for filing a safety complaint. In light of this new rule we directed the Board to determine whether its new test should be applied retroactively and, if not, to reinstate the ALJ's decision and order. On remand, the Board dismissed Ewing's complaint. It decided that since under its usual policy the new rule applied to all "pending" cases, it should be applied to Ewing. *Herbert F. Darling, Inc.,* 273 N.L. R.B. No. 52 (1984). This decision prompted the instant appeal.

## B. *The Board's Ruling in* Meyers

Section 8(a)(1) of the Act makes it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [§ 7 of the Act]." 29 U.S.C. § 158(a)(1). Section 7 provides, in relevant part, that employees shall have the right "to engage in ... concerted activities for ... mutual aid or protection" protects employees who not disputed that the reference to "mutual air or protection" protects employees who "seek to improve working conditions through resort to administrative and judicial forums." *Eastex, Inc. v. NLRB*, 437 U.S. 556, 566, 98 S.Ct. 2505, 2512, 57 L.Ed.2d 428 (1978). The question to be decided is what is meant by "concerted activities." Can one employee who seeks to improve working conditions by invoking a statutory right be engaged in such activities, or does it take more than one employee for the action to be concerted?

Relying on *Alleluia Cushion Co.*, 221 N.L.R.B. 999 (1975) (*Alleluia*), the ALJ below held that an individual employee who files a safety complaint is engaged in protected concerted activity, provided that there is no evidence that fellow employees disavow his action. *Herbert F. Darling, Inc.*, 267 N.L.R.B. at 481. He explained that in *Alleluia* the Board found that an employer that disciplines or discharges an employee who files a complaint "would indicate to the other employees the danger of seeking assistance from Federal or state agencies in order to obtain their statutorily guaranteed working conditions, and would thus frustrate the purposes of such protective legislation." *Id.* (quoting *Alleluia*, 221 N.L.R.B. at 1000).

When *Meyers* came before the Board, it overruled *Alleluia* and announced a new "objective" test to be used in determining whether activity is protected concerted activity. 268 N.L.R.B. at 496. *Meyers* involved a truck driver who, after having an

accident because of inadequate brakes, made a safety complaint, for which action his employer fired him. The Board held that the language of the statute and its legislative history required that the term "concerted" be read literally and that "concerted activities" would be protected within the meaning of the NLRB only if they involved two or more employees. The Board stated: "In general, to find an employee's activity to be 'concerted,' we shall require that it be engaged in with or on the authority of other employees, and not solely by and on behalf of the employee himself." *Id.* at 497. Its rationale for overruling *Alleluia* was largely that the opinion had received judicial criticism. *Id.* at 496. This Court among others has reversed the Board in cases in which it relied on *Alleluia*'s rationale. *See, e.g., Ontario Knife Co. v. NLRB*, 637 F.2d 840 (2d Cir.1980) (single employee's complaint about the assignment of machete work to the second shift); *Krispy Kreme Doughnut Corp. v. NLRB*, 635 F.2d 304 (4th Cir.1980) (single employee's filing of a workers' compensation claim).

Under the *Meyers* rule the Board has upheld retaliatory discharges arising from individual employee action taken in accordance with laws governing worker safety, workers' compensation, unemployment benefits, and wage and hour standards. The Board has applied its new test to a general personnel rule prohibiting such individual action. *See D.A. Collins Refractories*, 272 N.L.R.B. No. 135, slip op. at 5 n. 2 (1984) ("Our finding that the Respondent's policy does not affect, let alone restrain, any concerted activity is based on the clear meaning of the statutory language"). Because of its view that the phrase "concerted activities" was required to be read literally, the Board has found itself powerless to act even in those cases in which it would have liked to act. In *Meyers*, for example, the

---

1. Section 7 of the Act provides in relevant part:
   Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, *and to*

*engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection.*
29 U.S.C. § 157 (emphasis added).

Board explained that it was "[o]utraged ... by [an employer] who ... was clearly attempting to squeeze the last drop of life out of a trailer that had just as clearly given up the ghost, 'but did not believe it was empowered' to correct all immorality or even illegality arising under the total fabric of Federal and State laws." 268 N.L.R.B. at 499. We cannot agree that the *Meyers* rule or a literal reading of the word "concerted" is required by the Act. The Board cannot claim that its literal compliance with the "letter of the law" excuses its avoidance of the policies addressed by that law.

## II ANALYSIS

We reverse and remand this case for reconsideration because of the Board's mistaken view that it was required to interpret "concerted activities" literally, that is, that its decision was mandated by the Act. It is therefore unnecessary to reach the question of whether, in light of the Board's persistent failure to use its prospective rulemaking power, it was arbitrary for the Board to apply *Meyers* retroactively.[2]

### A. *The Reversal of* Meyers *in* Prill

On appeal, the District of Columbia Circuit reversed the Board's decision in *Meyers. Prill v. NLRB*, 755 F.2d 941. In reversing *Meyers*, the *Prill* majority relied in part on the fact that the Supreme Court in *City Disposal*, 104 S.Ct. 1505, clearly rejected the view that the language and history of the statute require the phrase "concerted activities" to be read literally.[3] 755 F.2d at 950–52. In *City Disposal* the Supreme Court explained that in light of the Board's assumed expertise in industrial relations, it should exercise its discretion

and construe the term in a way that effectuates the policies of the Act. 104 S.Ct. at 1510. The Court stated that "[t]here is no indication that Congress intended to limit this protection to situations in which an employee's activity and that of his fellow employees combine with one another in any particular way." *Id.* at 1513. Thus, given that the Board's conclusion in *Meyers* was not compelled by the language of the statute, and absent any explanation of how the new definition furthered the policies of the Act, the court in *Prill* remanded the case to the Board for further reconsideration under the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943). *See also FCC v. RCA Communications*, 346 U.S. 86, 95–96, 73 S.Ct. 998, 1004–1005, 97 L.Ed. 1470 (1953).

The Supreme Court's decision in *City Disposal* reversed the Sixth Circuit, which had held in an analogous situation that "concerted" must be read literally. In its writing the Court upheld what is known as the *Interboro* doctrine, which is invoked when an employee makes a complaint under a collective bargaining agreement rather than a statute. *See Interboro Contractors*, 157 N.L.R.B. 1295, 1298 (1966), *enforced*, 388 F.2d 495 (2d Cir.1967). A number of circuits had criticized or rejected the doctrine, thinking that the plain language of the statute required group action. *See City Disposal*, 104 S.Ct. at 1508 n. 4. The Supreme Court explained that "[a]lthough one could interpret the phrase, 'to engage in concerted activities,' to refer to a situation in which two or more employees are working together at the same time and the same place toward a common goal, the language of § 7 does not confine itself to

---

**2.** Should the Board in its discretion reject *Alleluia's* presumption of concertedness, we further direct the Board to reexamine and clarify its reasoning with respect to applying any such ruling in Ewing's case. In dismissing Ewing's complaint for a second time, the Board stated only that the Administrative Law Judge's findings and the record as had been developed at the original hearing did "not support a finding that the activity in which Respondent thought Ewing engaged ... was concerted." *Herbert F. Darling, Inc.*, 273 N.L.R.B. No. 52 at 5. At the time the General Counsel litigated Ewing's com-

plaint, however, *Alleluia* was the applicable standard and such proof was unnecessary.

**3.** For reasons not directly relevant to this appeal, Judge Edwards, writing for the majority, also found that the NLRB's definition of "concerted activities" does not represent a return to the standard relied on by the Board and courts before *Alleluia*, but instead constituted a new and substantially more restrictive standard. 755 F.2d at 953–56.

such a narrow meaning." *Id.* at 1511. Thus, the initial question of whether it always takes more than one employee to have "concerted" activity has been definitively answered in the negative.

Although we agree with the analysis of the implications of the Supreme Court's decision in *City Disposal* adopted by the court in *Prill*, we are in a somewhat different position than the *Prill* court. We are not reviewing, as it was, the original decision in *Meyers*, but only the *Meyers* rule as it is applied to *Ewing*. Were we to find that there is no construction of the statute that would afford relief to appellant Ewing, then remanding would be pointless. Thus, we must consider whether it is within the Board's discretion to protect the rights of workers such as Ewing in light of *City Disposal.*

B. *The Presumption of Concertedness Based on the Invocation of an Employment-Related Statutory Right*

The *Meyers* Board correctly noted that circuit courts generally have criticized *Alleluia.* But as the court in *Prill* explained, "many of the cases that rejected *Alleluia* relied on reasoning or on earlier decisions that disapproved all forms of 'constructive concerted activity' ... [and many] did not involve occupational safety or other statutory rights, but rather involved individual employee protests about job conditions." 755 F.2d at 953 n. 72. In view of the holding in *City Disposal*, the Board incorrectly concluded that activity is "concerted" only if it involves some sort of "group action" and that *Alleluia* was inconsistent with the Act because it allowed group support to be presumed absent evidence to the contrary. In *City Disposal* the Court observed that under section 8(a)(1) of the Act

> [i]t is possible ... for an employer to commit an unfair labor practice by discharging an employee who is not himself involved in concerted activity, but whose actions are related to other employees' concerted activities in such a manner as to render his discharge an interference or restraint on those activities.

104 S.Ct. at 1512 n. 10.

■ In *Meyers* the Board did not focus on whether Prill's discharge might deter his co-workers from engaging in collective activity. *Prill*, 755 F.2d at 953. That was precisely the rationale relied on by both the Board in *Alleluia*, 221 N.L.R.B. at 1000, and the ALJ below, 267 N.L.R.B. at 481. Here a co-worker testified that it was on "the grapevine that [Ewing] was laid off, or wasn't called back because he had blew the Darling Company into OSHA." We leave to the Board to determine in the first instance whether Ewing's lay off for a supposed safety complaint had a "chilling effect" on the collective rights of other employees. *Eastex*, 437 U.S. at 568, 98 S.Ct. at 2513. We hold that it is clearly within the Board's discretion to find that an individual's reasonable and good faith invocation of an employment-related statutory right is not "so remotely related to the activities of fellow employees that it cannot reasonably be said that the employee is engaged in concerted activity." 104 S.Ct. at 1512 n. 10.

Moreover, it is somewhat mystifying that the Board should find that an employer's threat to a group of its employees that it would discharge those responsible for filing a safety complaint is a violation of section 8(a)(1), and yet *not* find the actual discharge of an employee who filed the complaint to be such a violation. *See Certified Service, Inc.*, 270 N.L.R.B. No. 67 (1984). It is reasonable to presume, as did the Board in *Alleluia*, that co-employees support an individual employee's right to seek statutorily guaranteed terms and conditions of employment. The validity of that presumption "depends upon the rationality between what is proved and what is inferred." *Republic Aviation Corp. v. NLRB*, 324 U.S. 793, 805, 65 S.Ct. 982, 988, 89 L.Ed. 1372 (1945). Group support may rationally be assumed, absent evidence to the contrary, because fellow employees presumably want to be free to assert such a right without fear of losing their jobs.

■ We reject the view of the Fourth Circuit in *Krispy Kreme,* that the presumption is irrebuttable and that therefore the concertedness requirement is read out of the Act. 635 F.2d at 309. Just as an employer may show that a presumptively invalid no-solicitation rule is "necessary in order to maintain production or discipline," *Republic Aviation,* 324 U.S. at 804 n. 10, 65 S.Ct. at 988 n. 10 (citation omitted), an employer may demonstrate that an employee's presumptively concerted action was, in fact, frivolous or in bad faith and, therefore, both unprotected and lacking in group support. *See Socony Mobil Oil Co. v. NLRB,* 357 F.2d 662, 664 (2d Cir.1966). As a consequence, although the Board is not charged by Congress with the responsibility of enforcing all state and federal laws, the Board may protect workers from retaliatory discharges in their collective effort to achieve statutorily guaranteed working conditions.

## C. *The Need to Remand this Case to the Board*

This therefore is not a case in which all doubt as to how the Board will decide the case on remand has been eliminated. To remand the case again would not engage this Court and the Board in a "ping pong game." *NLRB v. Wyman-Gordon Co.,* 394 U.S. 759, 766 n. 6, 89 S.Ct. 1426, 1430 n. 6, 22 L.Ed.2d 709 (1969) (plurality opinion); *see NLRB v. American Geri-Care, Inc.,* 697 F.2d 56, 64 (2d Cir.1982), *cert. denied,* 461 U.S. 906, 103 S.Ct. 1876, 76 L.Ed.2d 807 (1983).

> [T]he process [of remanding], even though it may appear wasteful as regards the case in hand, is important for the proper execution of the legislative will, since proceeding on the right path may require or at least permit the agency to make qualifications and exceptions that the wrong one would not.

Friendly, Chenery *Revisited: Reflections on Reversal and Remand of Administrative Orders,* 1969 Duke L.J. 199, 223 (1969). Since a literal reading is not required, the Board may find a lack of concerted activity in "personal gripe" cases such as *Ontario Knife,* 637 F.2d at 845–46, but find concerted activity where an individual seeks to protect his own and his co-employees' statutory rights and to improve the terms and conditions of employment.

■ We recognize that "[a]n administrative agency is not disqualified from changing its mind; and when it does, the courts still sit in review of the administrative decision and should not approach the statutory construction issue *de novo* and without regard to the administrative understanding of the statutes." *NLRB v. Local 103, Iron Workers,* 434 U.S. 335, 351, 98 S.Ct. 651, 660, 54 L.Ed.2d 586 (1978). Hence, we express no view on what is the correct interpretation of "concerted activities" as applied to this case. But the Board's rationale will nonetheless be examined in light of the presumption that the old rule effectuated the policies of the Act and to ensure that the Board has given "a reasoned explanation of why the new rule effectuates the statute as well as or better than the old rule." *New York Council, Association of Civilian Technicians v. FLRA,* 757 F.2d 502, 508 (2d Cir.1985). *See generally* Gorman & Finkin, *The Individual and the Requirement of "Concert" Under the National Labor Relations Act,* 130 U.Pa.L.Rev. 286, 331–59 (1981) (discussing statutory policies furthered by *Alleluia* rule).

### III CONCLUSION

Accordingly, the Board's Supplemental Decision and Order is reversed and remanded with directions to the National Labor Relations Board either to provide a sustainable basis for its definition of "concerted activities" as applied to this case, or to reinstate the decision of the Administrative Law Judge.