814 F.2d 876
 125 L.R.R.M. (BNA) 2011, 86 A.L.R.Fed.
307, 55 USLW 2530,
106 Lab.Cas. P 12,328
 DISTRICT LODGE 91, INTERNATIONAL ASSOCIATION OF MACHINISTS
AND AEROSPACE WORKERS, AFL-CIO, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
United Technologies Corporation, Intervenor.
 No. 203, Docket 86-4088.
 United States Court of Appeals,
Second Circuit.
 Submitted Oct. 1, 1986.
Decided March 24, 1987.
 
 Gregg D. Adler, Hartford, Conn. (Daniel E. Livingston, Kestell, Pogue & Gould, Hartford, Conn., on the brief), for petitioner.
 John D. Burgoyne, Washington, D.C. (Rosemary M. Collyer, General Counsel, N.L.R.B., John E. Higgins, Jr., Deputy General Counsel, Robert E. Allen, Associate General Counsel, Elliott Moore, Deputy Associate General Counsel, Washington, D.C., on the brief), for respondent.
 Edward J. Dempsey, Director, Indus. Relations and Labor Counsel, United Technologies Corp., Hartford, Conn., for intervenor.
 Before KAUFMAN, KEARSE and ALTIMARI, Circuit Judges.
 ALTIMARI, Circuit Judge:
 
 
 1
 Petitioner District 91, International Association of Machinists and Aerospace Workers, AFL-CIO ("the Union") seeks review of an order issued by respondent National Labor Relations Board ("the Board") on May 19, 1986, dismissing an unfair labor practice complaint against intervenor United Technologies Corporation ("the company" or "the employer"). The complaint charged that the company had violated section 8(a)(1) of the National Labor Relations Act ("the Act"), 29 U.S.C. Sec. 158(a)(1), by enforcing a company ban on on-premises displays of large signs so as to require an employee to remove from the company's parking lot a campaign sign favoring a candidate for local union office. The Union seeks to have the Board order vacated, on the ground that the Board erred as a matter of law in balancing the company's interests against the statutorily protected rights of the workers. We agree with petitioner, and thus we grant the petition for review, vacate the Board's order, and remand for entry of an appropriate cease and desist order.
 
 I. BACKGROUND
 
 2
 The unfair labor practice complaint was submitted directly to a three-member panel of the Board, on the stipulated facts summarized here. A company foreman ordered employee Joseph Gallagher to remove his van from the employee parking lot. The foreman directed Gallagher not to park there unless he took down from the side of the van a 4' x 6' sign endorsing a candidate for presidency of the union local. Gallagher's open and repeated displays of the sign directly controverted the following company rule:
 
 
 3
 1. Any employee who drives a vehicle onto company property with any type of large sign or banner, political or otherwise, should be notified by the Guard Department that company rules prohibit such practice, and he will not be permitted to bring his vehicle onto the premises after that day until the sign has been removed.
 
 
 4
 2. Once an employee has been so notified, he shall not be permitted to bring the vehicle on the premises until the sign has been removed.
 
 
 5
 3. This rule is not intended to preclude employees from parking on company property their vehicles bearing bumper stickers, window stickers, or similar ornamentation or devices commonly displayed on automobiles, but rather to preclude purposely conspicuous displays intended to attract attention to promote a candidacy, organization or product.
 
 
 6
 Joint Appx. 6. This rule, by its own terms, applies exclusively to employees' activity in nonwork areas on nonwork time.
 
 
 7
 After Gallagher was disciplined for violating the rule, the Officer-in-Charge of the Board's Subregion 39 issued a complaint alleging that the sign display rule violated section 8(a)(1) of the Act, 29 U.S.C. Sec. 158(a)(1). The parties prepared a stipulation of facts and jointly requested that the case be submitted directly to a three-member panel of the Board, thus avoiding a hearing before an administrative law judge.
 
 
 8
 The Board, in a 2-1 decision, found that Gallagher was engaged in protected concerted activity under section 7 of the Act, 29 U.S.C. Sec. 157, when he displayed the union election campaign sign on company premises. After noting that section 7 protection for on-premises expression is not absolute, the Board determined that the company's rule represented a permissible balancing of the company's managerial interests and the employees' rights. United Technologies Corp., 279 N.L.R.B. No. 135 (1986).
 
 
 9
 The Board noted with approval that the company's rule is not a complete ban, but "only a very limited restriction on the display of signs." Id. at 7. The Board distinguished cases involving bans that precluded alternative means of communicating on company property. Id. at 8 (distinguishing Firestone Tire & Rubber Co., 238 N.L.R.B. 1323 (1978)). In declining to find a violation of section 8(a)(1), the Board concluded that the company "has simply taken reasonable measures to prevent its employee parking lots from being transformed into havens for distracting billboards for all causes imaginable.... [T]he [company's] attempt to establish some decorum, but still permitting the common display of union materials on company vehicles, is permissible." Id. at 8-9.
 
 
 10
 The dissenting Board Member insisted that the majority had confused two separate lines of cases: those where an employer's property rights are threatened by non-employees' presence on company property, and those where employees' on-premises activities implicate managerial interests only. Noting that the employer had not asserted any recognized managerial justification for its rule, the dissenter concluded that the company had violated the Act by restricting Gallagher's display of union materials.
 
 
 11
 The union petitions for review of the Board order.
 
 II. DISCUSSION
 A.
 
 12
 Our analysis commences with a brief reiteration of the well-established standards for review of Board interpretations of the National Labor Relations Act. The Board's readings of the Act are normally entitled to substantial deference, but a ruling that either lacks a rational basis or is inconsistent with the Act itself may not be endorsed. E.g., NLRB v. Financial Institution Employees Local 1182, 475 U.S. 192, 106 S.Ct. 1007, 1013, 89 L.Ed.2d 151 (1986); B.G. Costich & Sons, Inc. v. NLRB, 613 F.2d 450, 456 (2d Cir.1980). The Board's discretion in interpreting and applying the Act remains subject to Congress's goals in adopting the statute, and an application of the Act that rests on a misreading of the statute or prior judicial interpretations of it cannot be sustained. E.g., NLRB v. Stevens Ford, Inc., 773 F.2d 468, 472 (2d Cir.1985); Ewing v. NLRB, 768 F.2d 51, 56 (2d Cir.1985). Finally, we note that the Board abuses its discretion when it departs from prior interpretations of the Act without explaining why that departure is necessary or appropriate. E.g., Ewing, 768 F.2d at 56; cf. New York Council, Association of Civilian Technicians v. FLRA, 757 F.2d 502, 508 (2d Cir.), cert. denied, --- U.S. ----, 106 S.Ct. 137, 88 L.Ed.2d 113 (1985).
 
 
 13
 For the reasons set forth below, this court concludes that the order dismissing this unfair labor practice complaint constitutes an abuse of the Board's discretion.
 
 B.
 
 14
 The Board correctly ruled that employee Gallagher was engaging in protected activity when he displayed the campaign sign on his van. See NLRB v. Magnavox Co., 415 U.S. 322, 325-26, 94 S.Ct. 1099, 1102, 39 L.Ed.2d 358 (1974) (ban on distribution of literature by anti-union employees seriously dilutes those employees' rights); id. at 327, 94 S.Ct. at 1103 (Stewart, J., concurring in part and dissenting in part); cf. Republic Aviation Corp. v. NLRB, 324 U.S. 793, 803, 65 S.Ct. 982, 987, 89 L.Ed. 1372 (1945) (wearing union insignia on work clothes is protected); Coors Container Co. v. NLRB, 628 F.2d 1283, 1287 (10th Cir.1980) (displaying boycott sign in company lot protected). The Board also properly concluded that Gallagher's section 7 rights are not absolute, but instead must be balanced against the employer's managerial interests. E.g., Republic Aviation, 324 U.S. at 797-98, 65 S.Ct. at 985; NLRB v. Pratt & Whitney Air Craft Division, 789 F.2d 121, 128 (2d Cir.1986). The Board erred, however, in both analysis and result when it concluded that the company's sign display rule constituted a reasonable accommodation between employers' and employees' rights.
 
 
 15
 The courts and the Board itself have consistently recognized that there is a "difference ... 'of substance' " between the test used to balance employees' statutory rights against an employer's property rights and that used to balance section 7 rights against managerial concerns. Firestone Tire & Rubber Co., 238 N.L.R.B. 1323, 1323 (1978) (quoting NLRB v. Babcock & Wilcox Co., 351 U.S. 105, 113, 76 S.Ct. 679, 684, 100 L.Ed. 975 (1956)); see, e.g., Hudgens v. NLRB, 424 U.S. 507, 521-22 & n. 10, 96 S.Ct. 1029, 1036-37 & n. 10, 47 L.Ed.2d 196 (1976); compare Babcock & Wilcox, 351 U.S. at 113-14, 76 S.Ct. at 684-85 (involving threat to property rights arising from non-employees' on-premises organizing activities) with Republic Aviation Corp., 324 U.S. at 802-03, 65 S.Ct. at 987-88 (involving intrusion on managerial interests arising from employees' exercise of statutory rights while legally on premises pursuant to employment relationship).
 
 
 16
 An employer seeking to prove that its property interests justify a particular restriction on non-employee access to company property need only show that unlimited access is unnecessary because other, reasonably effective means of communication are available. E.g., Babcock & Wilcox, 351 U.S. at 113-14, 76 S.Ct. at 684-85; NLRB v. NBC, 798 F.2d 75, 76 (2d Cir.1986). Thus the extensiveness of the ban and the availability of alternative channels of communication form the focal point of the property rights balancing test.
 
 
 17
 Once an employer brings an employee onto company premises to work, as is the case here, the employer cannot assert its property interests as a basis for limiting protected speech by that employee. E.g., Eastex, Inc. v. NLRB, 437 U.S. 556, 573, 98 S.Ct. 2505, 2516, 57 L.Ed.2d 428 (1978); Republic Aviation, 324 U.S. at 803 & n. 10, 65 S.Ct. at 988 & n. 10 (discussing Peyton Packing Co., 49 N.L.R.B. 828, 843-44 (1943)). In this situation, the employer must rely exclusively on its managerial rights. See Eastex, 437 U.S. at 572-73, 98 S.Ct. at 2515-16; Hudgens, 424 U.S. at 521-22 & n. 10, 96 S.Ct. at 1036-37 & n. 10.
 
 
 18
 Managerial rights decisions make clear that any restriction of employees' on-premises communication in nonworking areas during nonworking hours " 'must be presumed to be an unreasonable impediment to self-organization ... in the absence of evidence that special circumstances make the rule necessary.' " Republic Aviation, 324 U.S. at 803-04 & n. 10, 65 S.Ct. at 988 & n. 10 (quoting Peyton Packing, 49 N.L.R.B. at 843-44); see also Eastex, 437 U.S. at 570-71, 98 S.Ct. at 2514-15; Pratt & Whitney, 789 F.2d at 128; Firestone Tire, 238 N.L.R.B. at 1323. In light of this presumption of unreasonableness, the Board and the courts have consistently imposed on employers the burden of proving "that the restriction is necessary to maintain production or discipline or otherwise prevent the disruption of [company] operations." Firestone Tire, 238 N.L.R.B. at 1323; accord Eastex, 437 U.S. at 571, 98 S.Ct. at 2515; Midstate Telephone Corp. v. NLRB, 706 F.2d 401, 403 (2d Cir.1983); NLRB v. New York University Medical Center, 702 F.2d 284, 290 (2d Cir.), vacated on other grounds, 464 U.S. 805, 104 S.Ct. 53, 78 L.Ed.2d 73 (1983). In addition, the Board has recognized that legitimate safety concerns are among the managerial interests that may overcome the presumption of invalidity and justify restriction of employees' protected speech. See, e.g., Malta Construction Co., 276 N.L.R.B. No. 171 at 3-5 & n. 4 (1985) (quoting Kendall Co., 267 N.L.R.B. 963, 965 (1983)). We conclude that in this case, neither the company nor the Board has identified how any of these legitimate, recognized managerial interests were implicated by employee Gallagher's campaign sign, so that the Board's order dismissing this complaint must be set aside.
 
 
 19
 The only interest identified by the company in its answer and in the stipulated facts, or by the Board in its decision, was the company's concern over the appearance of its employee parking lots. Undeniably, this is a legitimate property interest, but this would only enable the company to limit protected speech by non-employees. In order to conclude that the employer's aesthetic concerns are legitimate managerial interests, however, the Board would have had to find that the appearance of the employee parking lots had some effect on productivity, discipline, safety, or efficiency.
 
 
 20
 To be sure, in several managerial rights decisions the courts and the Board have considered the company's interest in protecting its public image when assessing the reasonableness of a particular restriction. E.g., Midstate Telephone, 706 F.2d at 404; Virginia Electric & Power Co. v. NLRB, 703 F.2d 79, 82 (4th Cir.1983); Davison-Paxon Co. v. NLRB, 462 F.2d 364, 368-69 (5th Cir.1972); Malta Construction, 276 N.L.R.B. No. 171 at 3-5; Southwestern Bell Telephone Co., 200 N.L.R.B. 667, 670 (1972). But in every such instance, the employer was obligated to prove that its public image was indeed threatened by the employees' display of union-related messages. Thus in Midstate Telephone, 706 F.2d at 403-04, and Davison-Paxon, 462 F.2d at 368, the employers had shown that their workers had regular contact with customers while at work, whereas the Board found an unfair labor practice had been committed in Malta Construction in part because "the Respondent's public contacts argument was not established by the evidence." 276 N.L.R.B. No. 171 at 5. Furthermore, the employers were obligated to prove that the type of communications they sought to restrict were likely to have a disruptive effect on company operations, whether it be retail sales, Davison-Paxon, 462 F.2d at 369 (wearing of gaudy buttons likely to threaten sales at fashionable clothing store, especially given "undisputed evidence" of animosity between factions of workers), health services, Vista Hill Foundation d/b/a Mesa Vista Hospital, 280 N.L.R.B. No. 27 (1986) (total ban on wearing union insignia, even by employees who did not have contact with patients, violates Act), or customer relations, Midstate Telephone, 706 F.2d at 403-04 (Board improperly invalidated rule preventing employees from wearing T-shirts inaccurately suggesting to the public that the company was coming apart); Virginia Electric, 703 F.2d at 82-83 (Board erred in invalidating limited ban on provocative buttons being worn in public lobby, "where there could have been a public conflict between supporters of competing unions").
 
 
 21
 In this case, the company never argued, and the Board never found, that the display of this sign in an employee parking lot at a manufacturing facility threatened the company's public image, its sales, or its customer relations generally. We reaffirm the principle that reviewing courts must grant deference to the Board's evaluation of the competing interests in this area, e.g., Pratt & Whitney, 789 F.2d at 128, but in this case, no legitimate competing managerial interest has been identified. The company did not satisfy its burden of proof under Eastex, Midstate Telephone, Firestone, and other managerial rights cases, and the pleadings and the stipulated facts of this case provide no basis for a conclusion that special circumstances justify the use of the company rule to restrict protected speech.
 
 
 22
 We note that besides remaining free to limit protected speech if special circumstances make it necessary to do so, employers certainly may restrict unprotected speech in an effort to promote decorum on company property. Cf. Eastex, 437 U.S. at 567-68, 98 S.Ct. at 2513. In addition, a company may prevent employees from wearing clothing or showing posters that contain offensive, obscene, or obnoxious messages. E.g., Southwestern Bell Telephone Company, 200 N.L.R.B. 667 (1972), discussed in Firestone, 238 N.L.R.B. at 1324. And companies have considerably greater freedom to restrict displays that are disparaging of the company itself. See, e.g., Midstate Telephone, 706 F.2d at 404 (discussing New York University Medical Center, 702 F.2d at 292). Thus, an employer does retain the right, as the Board described it here, "to prevent its parking lots from being transformed into havens for distracting billboards for all causes imaginable." But the employer's right to do so, in instances where it seeks to restrict clearly protected speech, is limited by the requirement that the employer show a legitimate business need for that restriction.
 
 
 23
 The Board purported to distinguish Firestone and its progeny on the basis that those cases involved total rather than partial bans on employee communications. This distinction, long a central focus of the inquiry in property rights cases, e.g., Babcock & Wilcox, 351 U.S. at 113-14, 76 S.Ct. at 684-85, has not been explicitly recognized by the Supreme Court as a pertinent factor in the managerial rights balancing test. See Eastex, 437 U.S. at 570-71, 98 S.Ct. at 2514-15 (interpreting Republic Aviation, 324 U.S. at 798-801, 65 S.Ct. at 985-87, to hold that employer must prove that banning on-premises distribution of literature is necessary to production or discipline regardless of whether off-premises distribution would be effective). But the Eastex Court explicitly confined its holding to the facts of that case, 437 U.S. at 575, 98 S.Ct. at 2517, and in NLRB v. Magnavox Co., 415 U.S. 322, 326-27, 94 S.Ct. 1099, 1102-03, 39 L.Ed.2d 358 (1974), the Court clearly left for future consideration the propriety of balancing the availability of alternative means of communication against legitimate business justifications for limiting or barring on-premises communication.
 
 
 24
 Since that time, this court and most other circuit courts have treated the extensiveness of a particular ban as one factor in assessing its reasonableness, but still require that there be substantial evidence that some restriction of employee speech was necessary. For example, in Midstate Telephone, 706 P.2d at 404, this court rejected a Board conclusion that "employees' ill-defined interests" in wearing T-shirts critical of the company outweighed the employer's legitimate interests, which included " 'maintain[ing] discipline and harmonious employee-management relations.' " Id. (quoting ALJ's finding). The court did rely on the fact that the company had only forbidden the wearing of a particular style of T-shirt, and allowed other employees to wear clothing bearing union insignia. Id.; see also Virginia Electric, 703 F.2d at 83; Davison-Paxon, 462 F.2d at 368-69; cf. NLRB v. United Technologies, 706 F.2d 1254, 1263-64 (2d Cir.1983) (union did have authority to consent through collective bargaining to partial limitation on employees' rights to engage in on-premises union solicitation) (discussing Magnavox, 415 U.S. at 324-27, 94 S.Ct. at 1101-03). But see Helton v. NLRB, 656 F.2d 883, 896 (D.C.Cir.1981) ("[T]he existence of alternatives is irrelevant.... [T]he availability of other channels of communication does not justify employer restraint of employees' Section 7 rights in nonwork areas at nonwork times.").
 
 
 25
 Similarly, Board decisions where this distinction has been utilized in assessing the reasonableness of a particular restraint have adhered to the principle that employers must show that some restriction is necessary. E.g., Vista Hill Foundation, 280 N.L.R.B. No. 27 at 4-5 ("Respondent must demonstrate an adverse impact on patient care"; ban on wearing insignia anywhere in hospital overly broad); Fluid Packaging Co., 247 N.L.R.B. 1469, 1474 (1980) (employee may be limited to wearing small button, rather than 10"" X 16"' sign, at workplace; sign was distracting and thus created safety risk), enf'd mem., 649 F.2d 860 (3d Cir.1981).
 
 
 26
 The ban in this case is obviously very limited. It applies only to large signs, and specifically allows use of less conspicuous items like bumper stickers and window signs. In addition, it has no effect on other means of communication such as literature distribution and oral solicitation. But this alone does not make the company's enforcement of its rule to limit protected speech reasonable.
 
 
 27
 We have already observed that the company, similar to the employer in Eastex, 437 U.S. at 573, 98 S.Ct. at 2516, has "made no effort to show that its management interests would be prejudiced in any way" by the display of large signs in its employee parking lots. Had the employer done so, we would almost certainly have to defer to the Board's ruling. But given the employer's failure to make this showing, "this is not the occasion to balance the availability of alternative channels of communication against a legitimate employer business justification for barring or limiting in-plant communications." Magnavox, 415 U.S. at 326-27, 94 S.Ct. at 1102-03 (footnote omitted).
 
 CONCLUSION
 
 28
 For these reasons, we conclude that the Board's decision is inconsistent with the Act as interpreted previously by the Board and reviewing courts, that the Board has failed to offer a reasoned basis for its departure from previous readings of the Act, and that the decision below therefore constitutes an abuse of the Board's discretion. E.g., NLRB v. Financial Institution Employees Local 1182, 475 U.S. 192, 106 S.Ct. 1007, 1013, 89 L.Ed.2d 151 (1986); Ewing v. NLRB, 768 F.2d 51, 56 (2d Cir.1985). Moreover, because this case was decided on very simple, undisputed facts, we see no reason to remand for reconsideration under the legal principles reaffirmed here. Cf. Ewing, 768 F.2d at 56.
 
 
 29
 We therefore grant the petition for review, vacate the Board's order, and remand for entry of an appropriate cease and desist order consistent with our view that on these stipulated facts enforcement of the sign-display rule violated section 8(a)(1) of the Act.
 
 KEARSE, Circuit Judge, dissenting:
 
 30
 With due respect to the majority, I dissent from its conclusion that an employer rule that bans from company parking lots only large and conspicuous displays on employee vehicles, while expressly permitting the more usual forms of displays such as bumper stickers, window stickers, or other commonly displayed devices, violates Sec. 8(a)(1) of the National Labor Relations Act, 29 U.S.C. Sec. 158(a)(1) (1982).
 
 
 31
 An employer has a legitimate managerial interest in preserving decorum on its premises and preserving its public image. See, e.g., Midstate Telephone Corp. v. NLRB, 706 F.2d 401, 403 (2d Cir.1983); Virginia Elec. & Power Co. v. NLRB, 703 F.2d 79, 82-83 (4th Cir.1983); Davison-Paxon Co. v. NLRB, 462 F.2d 364, 370 (5th Cir.1972). The employer in this case has a general rule prohibiting "large sign[s] or banner[s]" constituting "purposely conspicuous displays." The rule states that its intent is to preclude such "purposely conspicuous displays" but not to preclude "bumper stickers, window stickers, or similar ornamentation or devices commonly displayed on automobiles." The National Labor Relations Board ("Board") inferred from this rule that the employer merely sought "to prevent its employee parking lots from being transformed into havens for distracting billboards for all causes imaginable." Board Decision and Order dated May 19, 1986, at 8. This inference is hardly unreasonable; it is the most natural inference that can be drawn from the language of the rule itself, both from what it prohibits and from what it allows.
 
 
 32
 The sign that triggered the present proceeding was a 24 square foot sign endorsing a candidate for presidency of the union local. The employer's rule is a general one, barring such large signs for any purpose, "political or otherwise," whether "intended to attract attention to promote a candidacy, organization or product." There was no evidence that the banning of the vehicle that bore this sign from the company parking lot was a discriminatory act or anything other than the routine enforcement of the company's general rule. Nor was there any evidence that the employer did not follow that portion of its rule that expressly permitted the use of more commonly displayed communicative ornamentation.
 
 
 33
 The Board found that the employer's "attempt to establish some decorum, [while] still permitting the common display of union materials on employee vehicles" was a "reasonable accommodation between the [employer's] managerial interest and employees' Section 7 rights." Id. at 8, 9. I find this view neither arbitrary nor unreasonable and I think it proper to defer to the Board's evaluation of the competing interests. See NLRB v. Pratt & Whitney Air Craft Division, 789 F.2d 121, 128 (2d Cir.1986).
 
 
 34
 Accordingly, I would deny the petition for review.