**UNITED STATES of America, Plaintiff–Appellee,**

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WARE-HOUSEMEN AND HELPERS OF AMERICA, AFL–CIO; The Commission of La Cosa Nostra; Anthony Salerno, also known as Fat Tony; Matthew Ianniello, also known as Matty the Horse; Anthony Provenzano, also known as Tony Pro; Nunzio Provenzano, also known as Nunzi Pro; Anthony Corallo, also known as Tony Ducks; Salvatore Santoro; Christopher Furnari, Sr., also known as Christie Tick; Frank Manzo; Carmine Persico, also known as Junior, also known as The Snake; Gennaro Langella, also known as Gerry Lang; Philip Rastelli, also known as Rusty; Nicholas Marangello, also known as Nicky Glasses; Joseph Massino, also known as Joey Messina; Anthony Ficarotta, also known as Figgy; Eugene Boffa, Sr.; Francis Sheeran; Milton Rockman, also known as Maishe; John Tronolone, also known as Peanuts; Joseph John Aiuppa, also known as Joey O'Brien, also known as Joe Doves, also known as Joey Aiuppa; John Phillip Cerone, also known as Jackie the Lackie, also known as Jackie Cerone; Joseph Lombardo, also known as Joey the Clown; Angelo La-Pietra, also known as The Nutcracker; Frank Balistrieri, also known as Mr. B; Carl Angelo DeLuna, also known as Toughy; Carl Civella, also known as**

Corky; Anthony Thomas Civella, also known as Tony Ripe; General Executive Board, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America; Jackie Presser, General President; Weldon Mathis, General Secretary–Treasurer; Joseph Trerotola, also known as Joe T, First Vice President; Robert Holmes, Sr., Second Vice President; William J. McCarthy, Third Vice President; Joseph W. Morgan, Fourth Vice President; Edward M. Lawson, Fifth Vice President; Arnold Weinmeister, Sixth Vice President; John H. Cleveland, Seventh Vice President; Maurice R. Schurr, Eighth Vice President; Donald Peters, Ninth Vice President; Walter J. Shea, Tenth Vice President; Harold Friedman, Eleventh Vice President; Jack D. Cox, Twelfth Vice President; Don L. West, Thirteenth Vice President; Michael J. Riley, Fourteenth Vice President; Theodore Cozza, Fifteenth Vice President; Daniel Ligurotis, Sixteenth Vice President; and Salvatore Provenzano, also known as Sammy Pro, Former Vice President, Defendants,

Commercial Carriers, Inc., Appellant.

No. 1882, Docket 91–6284.

United States Court of Appeals,
Second Circuit.

Argued Nov. 20, 1991.

Decided Nov. 22, 1991.

Opinion June 24, 1992.

Edward T. Ferguson, III, Asst. U.S. Atty. S.D. New York, New York City (Otto G. Obermaier, U.S. Atty., of counsel), for plaintiff-appellee.

Mark A. Jacoby, New York City (Deborah S.K. Jakoda, I. Michael Kessel, Stacey L. Davidson, Weil, Gotshal & Manges, New York City, R. Ian Hunter, Robert L. Mercado, Patricia Morrow, Dean & Fulkerson, Troy, Mich., of counsel), for appellant.

Before: PRATT, MAHONEY, and McLAUGHLIN, Circuit Judges.

MAHONEY, Circuit Judge:

Nonparty appellant Commercial Carriers, Inc. appeals from an order of the United States District Court for the Southern District of New York, David N. Edelstein, *Judge*, entered November 19, 1991. That order affirmed a determination of the Election Officer appointed pursuant to a certain consent decree (the "Consent Decree") relating to the affairs of defendant International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL–CIO (the "IBT"). The Election Officer determined that Commercial Carriers must allow its truck drivers to display campaign stickers on company trucks in connection with the 1991 IBT election of national and regional officers. The district court upheld this determination, and ordered Commercial Carriers to pay attorney fees and other expenses incurred by the government and the Election Officer in litigating this matter.

Confirming a prior ruling of this court, *see United States v. IBT,* 950 F.2d 94 (2d Cir.1991) (per curiam), we reverse.

## Background

The facts underlying the litigation from which this appeal arises have been exhaustively set forth elsewhere. *See, e.g., United States v. IBT ("Yellow Freight"),* 948 F.2d 98, 100–01 (2d Cir.1992); *United States v. IBT,* 931 F.2d 177, 180–82 (2d Cir.1991); *United States v. IBT,* 905 F.2d 610, 612–15 (2d Cir.1990). We set forth only a summary adequate for present purposes.

In brief, the government's initiation of litigation intended to rid the IBT of the baneful influence of organized crime culminated in entry of the Consent Decree on March 14, 1989. Among other things, the Consent Decree was designed to ensure an open and fair election in 1991 for national and regional IBT offices. The Election Officer, charged under the Consent Decree with the supervision of that election, promulgated certain rules for that purpose (the "Election Rules"). *See United States v. IBT,* 931 F.2d at 187–90 (approving Election Rules as modified).

Commercial Carriers is a Michigan corporation that transports new and used cars and trucks by motor vehicle throughout the central, southern, and western United States. Commercial Carriers' drivers are IBT members. Wayne Wosnick is a Commercial Carriers employee and IBT member who drives a Commercial Carriers truck based in the company's West Chicago, Illinois terminal. Wosnick asserts that commencing mid-April 1991, he had affixed on the trailer of his truck two stickers endorsing the candidacy of Ron Carey for IBT president. Carey was one of three candidates for that office in the recent election, and ultimately the winner. Wosnick alleges that on September 16, 1991, Joe White, terminal manager of Commercial Carriers' West Chicago facility, told Wosnick that he would not be dispatched unless he removed the stickers.

Wosnick filed a protest with the Election Officer, who conducted an investigation. After interviewing Wosnick, eight other truckers for Commercial Carriers, and A.J. McKune, director of labor relations for Commercial Carriers, the Election Officer issued a determination on October 23, 1991. The Election Officer found that Commercial Carriers had neither a written policy nor an enforced oral policy against the placement of stickers on company vehicles. Further, the order requiring Wosnick to remove the Ron Carey stickers was deemed discriminatory on the basis of political content because Commercial Carriers made no attempt to compel the removal of nonpolitical stickers from the vehicle Wosnick was driving. Finally, the enforcement of the order was considered a violation of the Election Rules, which prohibit restrictions on an IBT member's "pre-existing rights to solicit support" for candidates for IBT of-

fice "on employer or Union premises." The Election Officer ordered Commercial Carriers "to allow IBT members to place or affix stickers and similar campaign items on the vehicles, both cabs and trailers, driven by IBT members while they are performing services for the company."

By letter to the Election Officer dated October 29, 1991, Commercial Carriers stated that it would not comply with his directive. The Election Officer promptly requested that the government institute appropriate contempt proceedings against Commercial Carriers. The government then wrote Commercial Carriers on November 4, 1991 demanding compliance, informing Commercial Carriers of this court's recent decision in *Yellow Freight*, and enclosing a copy of that opinion.

Rather than immediately appeal the Election Officer's determination to the Independent Administrator (also appointed pursuant to the Consent Decree), Commercial Carriers filed an action for injunctive relief in the United States District Court for the Eastern District of Michigan on November 6, 1991. Commercial Carriers subsequently sought to appeal to the Independent Administrator, but the appeal was rejected as untimely under the Election Rules and as made in bad faith (in view of the Michigan litigation). On November 7, 1991, the Michigan court denied Commercial Carriers' motion for a temporary restraining order, and on November 8, 1991, it dismissed the action. On November 11, 1991, Commercial Carriers appealed to the United States Court of Appeals for the Sixth Circuit.

The government sought an order to show cause in the Southern District of New York on November 15, 1991 to enforce the Election Officer's decision and compel withdrawal of the Sixth Circuit appeal. The district court convened a hearing on November 18, 1991, and entered an order on November 19, 1991 that granted the government's request for relief in full, threatened penalties for civil contempt if Commercial Carriers should fail to comply within twenty-four hours, and directed Commercial Carriers to compensate the Election Officer and the government for attorney fees and other expenses incurred in litigating this matter in New York and Michigan, apparently as a sanction for Commercial Carriers' "baseless refusal to comply with the Election Officer's decision and in connection with Commercial's lawsuit in the Sixth Circuit."

Commercial Carriers immediately appealed and moved in this court for emergency relief, and we heard oral argument on November 20, 1991. *United States v. IBT*, 950 F.2d at 95. At that argument, we granted a stay of the district court order pending determination of the appeal, and the parties agreed to treat the motion as an appeal on the merits. *Id.* Responding to this expedited process, Commercial Carriers promptly moved in the Sixth Circuit to dismiss its action in that forum, and dismissal occurred on December 2, 1991. *Commercial Carriers, Inc. v. United States*, No. 91–2247 (6th Cir. Dec. 2, 1991). In view of the imminence of the IBT election, we issued a *per curiam* order on November 22, 1991 that reversed the district court's order, directed that the mandate issue forthwith, and noted that this opinion would follow. 950 F.2d at 95.

## Discussion

The parties have argued a number of constitutional, jurisdictional, statutory, and other issues on this appeal. Especially in view of the intervening conclusion of the IBT election, which has largely mooted this controversy, *see United States v. IBT*, 964 F.2d 180, 183 (2d Cir.1992); *Yellow Freight*, 948 F.2d at 106 n. 4, we see no need to address all these issues. Rather, we shall consider only (1) the merits of the Election Officer's ruling in terms of the All Writs Act, 28 U.S.C. § 1651 (1988), the Consent Decree, and our prior ruling in *Yellow Freight;* and (2) the question of sanctions.

### A. *The Merits.*

In *Yellow Freight*, an employer of IBT members sought to enforce a "no solicitation" rule by barring nonemployee union members from campaigning for union of-

fice on its property. 948 F.2d at 99. The employer, Yellow Freight Systems, Inc. ("Yellow Freight"), was not a party to the Consent Decree, and therefore not directly bound by the Election Rules promulgated thereunder. The district court nonetheless approved an order by the Election Officer, affirmed on appeal by the Independent Administrator, that required Yellow Freight to allow a candidate for IBT office to campaign for that office on Yellow Freight property despite Yellow Freight's "no solicitation" policy. *Id.* In doing so, the district court invoked Article VIII, section 10(d) of the Election Rules, which provides that "no restrictions shall be placed upon candidates' or members' pre-existing rights to solicit support, distribute leaflets or literature, ... or engage in similar activities on employer or Union premises." *Id.* at 101.

Noting that the district court had "not purported to deem Yellow Freight bound by the Consent Decree," *id.* at 103, we nonetheless concluded, *id.* at 102–05, that the district court could exercise jurisdiction over Yellow Freight pursuant to the All Writs Act, 28 U.S.C. § 1651(a) (1988), which provides:

> The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

We reasoned that in certain limited circumstances, a judicial decree can be enforced against a nonparty to the decree, pursuant to the All Writs Act, if appropriate procedures are followed and applicable substantive law is observed. 948 F.2d at 102–05. We rejected Yellow Freight's contention that the district court was precluded from applying applicable national labor law in this dispute because the National Labor Relations Board had exclusive jurisdiction to do so. *Id.* at 105–06. We ultimately vacated the order of the district court, however, because no sufficient showing had been made, as required by applicable federal law, that campaigning IBT members lacked adequate alternative ways to communicate with Yellow Freight's em-

ployees away from the jobsite. *Id.* at 106–08; *see also Lechmere, Inc. v. NLRB,* — U.S. ——, 112 S.Ct. 841, 845–50, 117 L.Ed.2d 79 (1992); *United States v. IBT,* 955 F.2d 171, 174–76 (2d Cir.1992).

■ The government contends on appeal that *Yellow Freight* governs here and calls for affirmance. We disagree. *Yellow Freight* establishes that the All Writs Act can be invoked in aid of the effectuation of the Consent Decree and the Election Rules promulgated thereunder. It is very doubtful, however, that section 10(d) of the Election Rules even applies by its terms to this controversy. That provision authorizes union members to exercise "pre-existing rights" to engage in campaign activities "on employer or Union premises." We have great difficulty regarding an employer's "premises" as including its vehicles while they are driven on public highways around the nation.

In any event, we discern no "pre-existing right" for Commercial Carriers' employees to affix campaign stickers to the company's vehicles. The record evidence that Wosnick had done so for a few months before he was directed to terminate this activity does not suffice to establish a company policy leading to some sort of contractual right to engage in this conduct. As in *Yellow Freight,* therefore, we look to federal labor law for the resolution of this issue, and specifically to sections 7 and 8(a)(1) of the National Labor Relations Act, 29 U.S.C. §§ 157 and 158(a)(1) (1988), together with cases that have construed these provisions.

As we stated in *Yellow Freight,* it is "clear that intraunion campaigning activities implicate employees' section 7 right to 'form, join, or assist labor organizations,' or to 'refrain' therefrom, [29 U.S.C. § 157 (1988)], and that unlawful interference with that right is ... a section 8(a)(1) unfair labor practice. *See NLRB v. Magnavox Co.,* 415 U.S. 322, 324, 94 S.Ct. 1099, 1101, 39 L.Ed.2d 358 (1974); *District Lodge 91, Int'l Ass'n of Machinists v. NLRB,* 814 F.2d 876, 879 (2d Cir.1987)." *Yellow Freight,* 948 F.2d at 107. The question to

be determined is whether the activity at issue here falls within the ambit of this statutory protection.

These provisions have been construed to protect an employee's right to distribute union literature in nonworking areas of the employer's property during nonworking times, absent a showing by the employer that a ban is necessary to maintain plant discipline or production. *See Eastex, Inc. v. NLRB*, 437 U.S. 556, 570–72, 98 S.Ct. 2505, 2514–16, 57 L.Ed.2d 428 (1978); *Beth Israel Hosp. v. NLRB*, 437 U.S. 483, 507, 98 S.Ct. 2463, 2476, 57 L.Ed.2d 370 (1978). The display of union insignia on work clothes has also been ruled to be protected. *See Republic Aviation Corp. v. NLRB*, 324 U.S. 793, 801–05, 65 S.Ct. 982, 987–89, 89 L.Ed. 1372 (1945); *NLRB v. Malta Constr. Co.*, 806 F.2d 1009, 1011–12 (11th Cir.1986). It has also been held permissible to display signs endorsing union activity or a position in an intraunion election on a private vehicle on an employer's property. *See District Lodge 91*, 814 F.2d at 879 (campaign sign); *Coors Container Co. v. NLRB*, 628 F.2d 1283, 1287 (10th Cir.1980) (sign supporting union boycott of employer's products).

These cases fall far short of what the Election Officer directed here—that IBT members be allowed "to place or affix stickers and similar campaign items on the vehicles, both cabs and trailers, driven by IBT members while they are performing services for [Commercial Carriers]." Aside from obvious problems of imprecision and overbreadth, this determination is not confined to the premises of Commercial Carriers, relates to its vehicles rather than its employees' vehicles or work clothes, and has little discernible significance with respect to the conduct of the IBT election. Commercial Carriers legitimately objects that it should not be forced to provide "mobile billboards" for campaign messages, and that the presence of campaign stickers on its vehicles inaccurately suggests to the public and interested parties an endorsement of the advertised candidates by Commercial Carriers, thus threatening to embroil Commercial Carriers in a partisan union election.

We return to the terms of the All Writs Act, the sole possible authority for the order directed to Commercial Carriers and here on review. The All Writs Act requires that the contested order be "in aid of [the district court's] jurisdiction[ ]" and "agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The district court's jurisdiction is implicated here by the Consent Decree and the Election Rules, which are in turn directed to the conduct of a legitimate and impartial IBT election. Little significant assistance is provided to the objective of a proper IBT election, however, by the requirement that a third party provide mobile billboards for campaign advertisements on the nation's public highways. Further, in terms of the governing precedents in federal labor law, the order under appeal is a sharp departure from the applicable "usages and principles of law." We accordingly conclude that it must be reversed.

### B. Sanctions.

■ We have recently reviewed in considerable detail, in the context of Consent Decree litigation, the varied sources for the imposition of sanctions upon litigants and their counsel, and the rules and criteria applicable to each such source. *See United States v. IBT*, 948 F.2d 1338, 1343–47 (2d Cir.1991). No such detailed review is required, however, in this case.

The district court imposed sanctions here because Commercial Carriers insisted upon pursuing a "baseless" position. We have concluded, however, that the assertedly "baseless" position was in fact legally correct, so Commercial Carriers cannot be sanctioned for advancing it. *See New York State Nat'l Org. for Women v. Terry*, 961 F.2d 390, 400 (2d Cir.1992).

Nor is Commercial Carriers' initiation of the Sixth Circuit litigation sanctionable. Concededly, the government had called *Yellow Freight* to Commercial Carriers' attention, but (as we have seen) *Yellow Freight* does not support the government's position here, and in any event was not directed to the issue whether the Southern

**1478**

District of New York should exercise exclusive jurisdiction over Consent Decree litigation. *Cf. United States v. IBT,* 907 F.2d 277, 279–81 (2d Cir.1990) (addressing issue of exclusive Southern District jurisdiction as to Consent Decree litigation by IBT members and affiliates). Especially given the exigencies of the situation and Commercial Carriers' lack of any significant contacts with the Southern District of New York, it was not frivolous, or in any other sense sanctionable, for Commercial Carriers to seek to vindicate its legitimate legal position in the courts of the Sixth Circuit.

### Conclusion

We reiterate the reversal of the order of the district court and vacation of its injunction directed in *United States v. IBT,* 950 F.2d at 95. The mandate has already issued. *Id.*